### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

ABBASID, INC. d/b/a/ Azhar's Oriental Rugs,

      Plaintiff,

vs.

                                No.     09-cv-354

LOS ALAMOS NATIONAL BANK,

      Defendant.

### MEMORANDUM OPINION AND ORDER

On April 19, 2011, the Court entered a Memorandum Opinion and Order (Doc. No. 150) concluding that Plaintiff Abbasid Inc. (Abbasid) was in civil contempt for its failure to comply with the Court's orders.  The Court ordered Abbasid to compensate Defendant Los Alamos National Bank (LANB) for the losses LANB sustained as a result of Abbasid's contempt and the Court instructed LANB to provide the Court with an affidavit detailing the losses that LANB sustained as a result of Abbasid's contempt.  LANB submitted an Affidavit of James R. Jurgens, Esq. of Attorney's Fees, Costs and Taxes Incurred by Los Alamos National Bank Re: Motion for Order to Show Cause Why Azhar Said Should Not be Held in Contempt (Affidavit) (Doc. No. 151) on April 23, 2011.  In Jurgens' Affidavit, LANB claimed that it incurred $3,489.04 in costs and attorney's fees as a result of Abbasid's contempt.

On April 15, 2011, four days prior to the Court's entry of its April 19, 2011 Memorandum Opinion and Order, Abbasid filed a Notice of Bankruptcy (Doc. No. 241 in 09-cv-347) in a separate case—*Abbasid v. First National Bank of Santa Fe*, 09-CV-00347.  Abbasid did not file a notice of bankruptcy in this case.  In its Notice of Bankruptcy, Abbasid noted that an involuntary petition for bankruptcy was filed against Abbasid on April 14, 2011.  Abbasid

attached a copy of the petition for involuntary bankruptcy to its Notice of Bankruptcy.

Under the bankruptcy code, a petition for involuntary bankruptcy "operates as a stay, applicable to all entities, of," among other things, "the commencement or continuation . . . of a judicial . . . action or proceeding against a debtor that was or could have been commenced before the commencement" of the bankruptcy proceeding.  11 U.S.C. §362(a)(1).  Thus, under §362(a)(1), the proceedings in this Court were automatically stayed when the involuntary petition for bankruptcy was filed on April 14, 2011.  Because the proceedings are stayed, the Court's imposition of a monetary fine against Abbasid at this time would be void.  *See In re C.W. Mining Co.*, 625 F.3d 1240, 1246 (10th Cir. 2010).  That the proceedings against Abbasid are stayed, however, does not preclude the Court from determining the amount of compensation that LANB is entitled to as a result of Abbasid's civil contempt nor does it preclude LANB from recovering that compensation from Azhar Said, Abbasid's president and sole shareholder.

The basis for the Court's finding of contempt was Abbasid's violation of two specific orders.  The first order was a November 12, 2010 order requiring Azhar Said to appear for a November 17, 2010 deposition.  In holding Abbasid in contempt, the Court noted that Abbasid *and* Azhar Said had violated this order and that the contemptuous act was Said's failure to appear.  *See* April 19, 2011 Memorandum Opinion and Order at 8.  The second order that Abbasid violated was the Court's November 22, 2010 order requiring Abbasid to respond to LANB's requests for production and to answer LANB's interrogatories.  Because Said is the sole corporate officer for Abbasid, Abbasid's failure to comply with the Court's orders is imputed on Said individually as Abbasid, a corporation, is not capable of producing documents, or responding to an interrogatory.  *See Wilson v. United States*, 221 U.S. 361, 366 (1911) (noting that "[a] command to the corporation is in effect a command to those who are officially

2

responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt"). Azhar Said as an individual committed the contemptuous act; therefore, the Court's finding of contempt applies to Azhar Said individually as well as to Abbasid, and Azhar Said is personally responsible for the losses that LANB sustained. *See* April 19, 2011 Memorandum Opinion and Order at 8-9.

Because the Court's finding of contempt applies to Azhar Said individually, and because the bankruptcy proceeding only involves Abbasid, the Court concludes that the automatic stay imposed by the involuntary bankruptcy petition does not preclude the Court from assessing the compensatory fine that Azhar Said individually is required to pay to compensate LANB for the losses LANB incurred as a result of Abbasid and Azhar Said's contempt.

In Jurgens' Affidavit,  LANB notes that it incurred $2,244.89 in attorneys fees and costs preparing for and attending the November 17, 2011 deposition at which Said failed to appear, that it incurred $703.22 in attorney's fees and costs preparing its January 14, 2011 Motion for Order to Show Cause Why Azhar Said Should Not Be Held in Contempt and For Sanctions (Show Cause Motion) (Doc. No. 131), and that it incurred $540.93 in attorney's fees and costs preparing its Reply to Response to Motion for Order to Show Cause Why Azhar Said Should Not Be Held in Contempt and For Sanctions (Show Cause Reply) (Doc. No. 136).

As the Court indicated in its April 19, 2011 Memorandum Opinion and Order, Abbasid and Said are only required to compensate LANB for the losses LANB incurred as a result of

Abbasid and Said's civil contempt.[1]   The Court finds that the costs LANB incurred for preparing

its Show Cause Motion and its Show Cause Reply are directly related to Azhar Said's civil

contempt and that LANB is therefore entitled to be fully compensated for their preparation.  If

Azhar Said had not violated this Court's orders, LANB would not have been required to file its

Show Cause Motion or its Show Cause Reply.  Because the Court also finds that LANB's

counsel's hourly rate of $250.00 is reasonable, the Court will award LANB $1,244.15 for the

attorney's fees and costs that LANB incurred for preparing its Show Cause Motion and its Show

Cause Reply.

        With respect to LANB's request that it be awarded $2,244.89 for the attorney's fees and

costs incurred related to the deposition, the Court concludes that the requested amount is not

reasonable as LANB's request includes items that cannot be categorized as losses that LANB

sustained as a result of Azhar Said's contempt.  LANB lists the following six expenses related to

the deposition in its affidavit:

Prepare notice to take deposition duces tecum with request for documents exhibit

    1.2 hours @ $250/hr                                                     $300.00

Prepare certificate of service of notice to take deposition, e-file

    0.2 hours @ $250/hr                                                     $50.00

Exchange emails with Bill Mount re deposition                        $50.00

Prepare for and attend deposition

    6.2 hours @ $250.hr                                                     $1550.00

---

[1]Because Azhar Said is personally liable for the contempt, and because the proceedings against Abbasid have been stayed, the Court will refer only to Azhar Said when discussing the contempt in the remainder of this opinion.

| | |
|---|---|
| Gross Receipts Tax at 8.1875% | $159.66 |
| Court reporter notice of non-appearance fee | $135.23 |

Affidavit at 2.  Because the Court has found Azhar Said to be in civil contempt, the Court is only

permitted to award LANB the amount necessary to compensate LANB for the losses it sustained

as a result of Azhar Said's contempt.  Thus, the Court must determine whether each of the six

itemized expenses for which LANB seeks compensation is directly related to Azhar Said's

contempt.

With respect to the attorney's fees LANB incurred preparing its notice to take a

deposition duces tecum, the Court concludes that this expense was not a direct result of Azhar

Said's contempt.  Not only did LANB incur this expense *prior* to Said's failure to appear, but

LANB can also use the same notice again when it schedules another deposition of Azhar Said

and LANB will therefore not be required to reincur these fees. The Court therefore will not

award LANB any compensation for the expenses it incurred for preparation of the notice of a

deposition duces tecum.

In contrast, the fees that LANB incurred for preparing a certificate of service and e-filing

its notice of deposition will re-occur when LANB files an amended notice of deposition.  That is,

because Said failed to appear at the deposition, LANB will be forced to prepare a new certificate

and LANB will have to e-file a second notice of deposition when it reschedules Said's

deposition. Because LANB would not be required to re-incur these fees but for Azhar Said's

contempt, the Court concludes that these fees are losses that LANB sustained as a result of

Azhar Said's contempt and are thus recoverable.  Similarly, the fees charged for the email

messages that LANB exchanged with Abbasid's counsel are also losses that resulted from Azhar

Said's contempt.  To the extent that these emails dealt with confirming the date and time of the

deposition, LANB will be forced to re-incur these same fees once it schedules a second deposition.  And, to the extent that the emails dealt with Said's refusal to appear at the deposition, the emails were directly related to Said's contempt.  Thus, LANB is entitled to be compensated for these attorney's fees.  Likewise, LANB would not have been required to pay the court reporter's non-appearance fee if Azhar Said had appeared at the deposition.  This fee is therefore recoverable.

More complicated, however, is whether the attorney's fees that LANB incurred regarding preparation for and attendance at the deposition can be classified as losses that LANB sustained as a result of Azhar Said's contempt.  The attorney's fees incurred as a result of LANB's attendance at the deposition are obviously losses that LANB sustained as a result of Azhar Said's contempt as the time that LANB's counsel spent at the deposition was completely wasted as a result of Said's refusal to appear.  In addition, LANB will be forced to re-incur these fees a second time when Said actually appears for the deposition.  According to the transcript of the deposition that LANB attached to its Motion for Order to Show Cause Why Azhar Said Should Not be Held in Contempt and for Sanctions (Doc. No. 130), LANB's attorney spent approximately thirty minutes at the deposition location awaiting Said's appearance and the Court concludes that LANB is entitled to be compensated for this time.

With respect to the preparation for the deposition, however, the Court finds that some of the work that LANB's counsel performed preparing for the deposition would not need to be duplicated prior to a second deposition and therefore cannot be classified as a loss.  Having already prepared for the deposition, LANB's counsel's preparation for a second deposition will necessarily be shorter as much of the work has already been completed.  Thus, to the extent that the work LANB's counsel performed preparing for the deposition can be used once the parties

are able to reschedule the deposition, that work cannot be considered a loss.  However, some

additional preparation for another deposition will still be necessary, and some portion of

LANB's preparation for the initial, aborted deposition is therefore a loss sustained as a result of

Azhar Said's contempt. The Court concludes that 2.5 hours is a reasonable amount of time to re-

prepare for the deposition, and thus deems 2.5 hours of the time LANB spent preparing for the

first deposition to be a loss resulting from Said's failure to appear.  Thus, the Court will award

LANB attorney's fees for three hours of the time LANB's counsel spent preparing for and

attending the deposition—2.5 hours for the preparation and .5 hours for actually attending the

deposition.

    While Abbasid or Said did not file any response or objection to LANB's Affidavit, the

Court also notes that Abbasid attached an email message to its Response to LANB's Opposed

Motion for Order to Show Cause Why Azhar Said Should be Held in Contempt and for

Sanctions (Doc. No. 132) indicating that LANB may have had notice, prior to the deposition,

that Said was not going to attend.  In that email, Abbasid's counsel states "[n]either Mr. Said, or

a corporate representative will appear for a deposition tomorrow.  No documents will be

produced.  There is no need for a court reporter or to incur expenses." The email was apparently

sent to LANB's counsel at 6:46 p.m. on November 16, 2010, the evening before the scheduled

deposition.  Abbasid's counsel having sent this email does not alter the Court's conclusion that

LANB is entitled to compensation for three hours of the time its counsel spent preparing for and

attending the November 17, 2010 deposition.  First, there is no evidence that LANB's counsel in

fact received this email prior to the deposition.  Given that the message was sent at 6:46 p.m.,

and given that the deposition was scheduled for 9:00 a.m. the following morning, it is possible

that LANB's counsel did not receive the email until after attending the deposition at which Said

failed to appear.  Further, given the late time the email was sent, the Court finds that it is highly probable that LANB's counsel had already completed preparing for the deposition scheduled for the next morning.  Finally, even if the Court assumes that LANB received the email prior to the deposition, the Court concludes that it was still reasonable for LANB to attend the deposition in order to make a record that Said had failed to appear.

The Court therefore awards LANB the following as compensation for the losses it sustained as a result of Azhar Said's contempt:

(1) Attorney's fees in the amounts of

$50.00 for the preparation of a certificate of service and e-filing;

$50.00 for exchanging email messages with Abbasid's counsel;

$750.00 for preparing for and attending the deposition at which Said failed to appear;

$703.22 for the costs and fees related to preparing and filing LANB's Motion for Order to Show Cause Why Azhar Said Should Not be Held in Contempt and for Sanctions; and

$540.93 for the costs and fees related to preparing and filing LANB's Reply to Response to Motion for Order to Show Cause Why Azhar Said Should Not be Held in Contempt and for Sanctions.

(2) $69.59 for the New Mexico gross receipts tax on the above attorney's fees; and

(3) $135.23 for the court reporters non-appearance fee;

In sum, LANB is entitled to a total compensatory award of $2,298.74 for the losses LANB sustained as a result of Azhar Said's civil contempt.

IT IS ORDERED THAT by July 10, 2011, AZHAR SAID, individually, pay $2,298.74 to

Los Alamos National Bank as compensation for the losses LANB sustained as a result of Azhar

Said's civil contempt.

_____

SENIOR UNITED STATES DISTRICT COURT JUDGE